IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**ZACHARY BARFIELD,**  CASE NO. 3:22 CV 959

Plaintiff,

v.  JUDGE JAMES R. KNEPP II

**DEPUTY WARDEN SPECIAL
SERVICES, et al.,**

Defendants.  **MEMORANDUM OPINION
AND ORDER**

### INTRODUCTION

*Pro se* plaintiff Zachary Barfield has filed this civil rights action under 42 U.S.C. § 1983 against the Deputy Warden Special Services, Mailroom Supervisor, Chaplain Rupert, "STG Bennett," and "STG Director Norriss" alleging Defendants violated his constitutional rights under the First Amendment (Doc. 1). Plaintiff seeks damages and a prison transfer. *Id.* at 7.

### BACKGROUND

Plaintiff asserts that Asatru is an ODRC-approved religion, and as an approved religion, "we are allowed to have pictures [and] symbols" of the faith. (Doc. 1, at 3). Plaintiff claims that on numerous occasions, "[his] pictures got denied on . . . electronic mail by mail room staff." According to Plaintiff, Jane Doe (a mailroom staff member) had no knowledge of the Asatru faith and advised Plaintiff the symbols constituted white supremacy symbols and were therefore not permitted. *Id.* at 3-4. Plaintiff states Jane Doe "is in a relationship with a non-white man so she retaliates by denying [his] religious pictures." *Id.* at 4.

Plaintiff states Defendant Bennett, who Plaintiff identifies as "STG (Security Threat Group) Bennett," is charged with the task of approving or denying mailroom labels. Plaintiff alleges Bennett has failed to either approve or deny his pictures and therefore "continues to falsely label [him] a skinhead." Plaintiff claims Defendant Norriss, who Plaintiff identifies as "STG-Director Norriss," allowed Bennett to falsely label him as a skinhead. *Id.* at 5-6.

Plaintiff further states Chaplain Rupert's duties include ensuring mailroom staff know about each faith so they know which symbols to deny or approve. *Id.* at 5. He claims Chaplain Rupert has "failed to complete his job duties by not updating the mailroom on symbols." *Id.*

Finally, Plaintiff states that the Deputy Warden Special Services oversees religious services and the mailroom. *Id.* at 4. He claims the Deputy Warden's job is to ensure that the mailroom staff "is up to date and they follow the policy" regarding permitted religious materials. Plaintiff alleges the Deputy Warden has failed to perform her job duties because the mailroom staff has no knowledge of the Asatru faith. *Id.*

Plaintiff has filed an application to proceed *in forma pauperis* (Doc. 2), a motion for default judgment (Doc. 4), and two motions for appointment of counsel (Docs. 3, 5).

STANDARD OF REVIEW

Plaintiff's application to proceed *in forma pauperis* has been granted by separate Order. His complaint is therefore now before the Court for initial screening under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. These statutes expressly require federal district courts to screen all *in forma pauperis* complaints filed in federal court, and all complaints in which a prisoner seeks redress from governmental employees, and to dismiss before service any such complaint that the court determines is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See Hill v.*

*Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). *Pro se* pleadings generally are liberally construed and held to less stringent standards than formal pleadings drafted by lawyers, *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), but even a *pro se* complaint must set forth sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face to survive dismissal. *See Hill*, 630 F.3d at 470-71 (holding that the standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), applies to review of *pro se* prisoner cases under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,'. . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Further, a complaint may be dismissed for failure to state a claim if it fails to "give the defendant fair notice of what the. . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

## DISCUSSION

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. To state a claim under § 1983, Plaintiff must show that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiff must also allege the defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior. *Rizzo v. Goode*, 423 U.S.

3

362, 371 (1976); *see also Heyerman v. Cnty. of Calhoun*, 680 F.3d. 642, 647 (6th Cir. 2012) (noting that "[p]ersons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior"); *Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability"). Individual liability must therefore "be based on the actions of that defendant in the situation that the defendant faced, and not based on any problems caused by the errors of others, either defendants or non-defendants." *Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir. 1991). A defendant must therefore "d[o] more than play a passive role in the alleged violations or show mere tacit approval" of the actions in question. *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006).

To the extent Plaintiff is attempting to assert a supervisory liability claim, the supervisors cannot be liable for a § 1983 claim "premised solely on a theory of respondeat superior, or the right to control employees." *Heyerman*, 680 F.3d at 647. The Sixth Circuit has held that to be liable under § 1983, a supervisor must at least implicitly authorize, approve, or knowingly acquiesce in the unconstitutional conduct of the offending individual. *Hays v. Jefferson Cnty.*, 668 F.2d 869, 874 (6th Cir. 1982). A failure to supervise, control, or train an individual is not actionable "unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Hays*, 668 F.3d at 874).

Here, Plaintiff states the Deputy Warden oversees religious services and the mailroom, the Chaplain oversees religious services, and Norriss supervises Bennett. Plaintiff alleges that these Defendants, in the course of their jobs as supervisors, failed to adequately train or supervise their staff on proper protocol concerning acceptable religious imagery. These claims

4

therefore concern the Defendants' failure to remedy allegedly unconstitutional behavior. The failure to intervene on a prisoner's behalf, however, does not rise to the level of a constitutional violation. *See Shehee*, 199 F.3d at 300. And Plaintiff has failed to make any factual allegations to support even an inference that these Defendants directed or participated in the alleged misconduct. His conclusory allegations that the Deputy Warden, the Chaplain, and Norriss have failed in their supervisory capacities, without any factual allegation in support that any or all encouraged or participated in the alleged misconduct, is insufficient to establish liability under § 1983. Accordingly, to the extent Plaintiff asserts claims against Deputy Warden Special Services, Chaplain Rupert, and STG-Director Norriss, he fails to state a plausible claim upon which relief can be granted.

To the extent Plaintiff alleges the mailroom staff member and Bennett violated his First Amendment rights by denying Plaintiff his purported religious imagery through the electronic mail system, his claim also fails.

The First Amendment to the United States Constitution provides that Congress shall make no law prohibiting the free exercise of religion, and this prohibition applies to the states by virtue of the Fourteenth Amendment. *See Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Prisoners retain their First Amendment right to the free exercise of religion while incarcerated, but that right is subject to reasonable restrictions and limitations. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972); *Walker v. Mintzes*, 771 F.2d 920, 929 (6th Cir. 1985).

The mere assertion of a religious belief does not automatically trigger First Amendment protections. To establish a free exercise First Amendment claim, a plaintiff must initially show that: (1) the belief or practice he seeks to protect is religious in his "own scheme of things," (2) his belief is sincerely held, and (3) the defendant's behavior infringes upon this practice or belief.

5

*See Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987) (citation omitted). "[T]he touchstone for determining whether a religious belief is entitled to free-exercise protection is an assessment of whether the beliefs professed . . . are sincerely held, not whether the belief is accurate or logical." *Colvin v. Caruso*, 605 F.3d 282, 298 (6th Cir. 2010) (emphasis in original) (internal quotation marks and citation omitted). And the prison's actions must substantially burden an inmate's sincerely held religious belief. *Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010) (citation omitted); *see also Wilson v. NLRB*, 920 F.2d 1282, 1290-91 (6th Cir. 1990) ("The free exercise inquiry asks whether government has placed a substantial burden on the observation of a central religious belief or practice and, if so, whether a compelling governmental interest justifies the burden.") (citing *Hernandez v. C.I.R.*, 490 U.S. 680, 697 (1989)).

The next step is to determine whether the prison official's challenged behavior furthers some legitimate penological objective. *Turner v. Safley*, 482 U.S. 78, 89 (1987); *Kent*, 821 F.3d at 1225 (citations omitted). Prison officials are accorded wide latitude and deference in the adoption and application of prison policies and procedures in this regard. *See Bell v. Wolfish*, 441 U.S. 520, 546-47 (1979); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) ("To ensure that courts afford appropriate deference to prison officials, the Supreme Court has determined that prison regulations alleged to infringe constitutional rights are judged under a reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights.") (internal quotations omitted). "[B]ecause 'the problems of prisons in America are complex and intractable,' and because courts are particularly 'ill equipped' to deal with these problems . . . [courts] generally have deferred to the judgments of prison officials in upholding these regulations against constitutional challenge." *Shaw v. Murphy*,

532 U.S. 223, 229 (2001) (quoting *Procunier v. Martinez*, 416 U.S. 396, 404-05 (1974)) (internal citation omitted).

Here, Plaintiff's complaint cannot survive the initial inquiry. Generously construing the complaint, the Court finds Plaintiff has alleged he is a member of the Asatru faith, as he states that "we" are permitted certain religious imagery. (Doc. 1, at 3). Plaintiff, however, fails to allege that he has a "sincerely held" religious belief. His passing reference to his entitlement to Asatru imagery is insufficient. Nor has he alleged his inability to receive religious imagery through the electronic mail system has posed a substantial burden on his Asatru faith. A government's action constitutes a substantial burden when it forces an individual to choose between "following the precepts of [his] religion and forfeiting benefits," but not when it merely imposes an inconvenience or makes the practice of one's religion more difficult or expensive, as Plaintiff's allegations at most suggest here. *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 734-37 (6th Cir. 2007).

Finally, to the extent Plaintiff is attempting to raise a retaliation claim, his claim fails. Retaliation based upon a prisoner's exercise of his constitutional rights violates the Constitution. *See Thaddeus X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). Plaintiff's conclusory allegation that the mailroom staff member "is in a relationship with a non-white man so she retaliates by denying my religious pictures" without more, however, is insufficient to state a claim for retaliation. *See Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996) (a court is not required to accept summary allegations or unwarranted conclusions in determining whether a complaint states a claim for relief); *see also Vaughn v. Sec'y of the Dep't of Veterans Affairs*, 2022 WL 118186, at *2 (N.D. Ohio) (a complaint is properly dismissed for failure to state a claim under Section 1915(e)(2)(B) where it fails to provide any factual support for

conclusory allegations that a defendant unlawfully discriminated or retaliated) (citing, *inter alia*, *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 613 (6th Cir. 2012)).

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Plaintiff's Complaint be, and the same hereby is, DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; and it is

FURTHER ORDERED that Plaintiff's motions for the appointment of counsel (Doc. Nos. 3, 5) and for default judgment (Doc. No. 4) be, and the same hereby are, DENIED; and the Court

FURTHER CERTIFIES, pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from this decision could not be taken in good faith.

                                                          s/ *James R. Knepp II*
                                                         UNITED STATES DISTRICT JUDGE